**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
ORLANDO DIVISION

**UNITED STATES OF AMERICA**

**VS.**                                              CASE NO: 6:11-cr-221-Orl-28KRS

**STEPHEN B. DELUCA**

_____

ORDER

A jury found Defendant, Stephen B. DeLuca, guilty of one count of conspiracy and thirty-two counts of wire fraud—crimes committed in connection with loans made to Defendant's gasoline and oil business. During its investigation of Defendant, the Government improperly accessed email communications between Defendant and his lawyers. Because the Government's conduct violated attorney-client privilege, Defendant moves to dismiss the Indictment against him. The motion must be denied, however, because the Government did not violate Defendant's constitutional rights and Defendant was not otherwise prejudiced.

I.  Background

   A.  Indictment and Conviction

The Government accused Defendant of defrauding a financial institution in his role as president and sole shareholder of Delco Oil, Inc. ("Delco"), a company that distributed oil and gasoline to its own and other gas stations. In seeking financing for Delco, a Delco employee submitted false statements to lending institutions regarding the company's accounts receivable and inventory. Relying on the fraudulent information, the institutions made loans to Delco. A grand jury returned an Indictment charging Defendant with conspiracy and fraud in connection with these events. (Doc. 1). Defendant entered a plea

of not guilty, and the trial that ensued resulted in a mistrial due to a jury impasse. (Mins., Doc. 87). After a second trial, a jury found Defendant guilty of all charges. (Verdict, Doc. 161). Notwithstanding the jury impasse in the first trial, the evidence against Defendant was compelling.

### B.    Pretrial Investigation

As a part of its investigation, the FBI searched Delco's offices, (Doc. 229-2 at 1), and seized the company's computers and hard drives, (June 4 Tr., McCrohan Test., Doc. 202, at 49-52). In its investigation, the Government also acquired a particular external hard drive ("the Sharp Bytes hard drive"), which had data similar but not identical to that found on the Delco computers. (See June 4 Tr., Stelly Test., at 99, 113; Oct. 18 Tr., Doc. 210, Stelly Test., at 46-47). The Government obtained a search warrant specifically for the data on the Sharp Bytes hard drive. (June 4 Tr., Stelly Test., at 99, 113).

The data on the computers and the Sharp Bytes hard drive included communications between Defendant and his various lawyers. Early in the investigation, defense counsel and members of the United States Attorney's Office discussed a procedure to protect against the Government's use of privileged attorney-client communications. Acknowledging that the data likely included privileged communications between Defendant and his attorneys, the Government prepared a proposed stipulation providing "for the protection of any applicable privilege while allowing the FBI to review any non-privileged data contained on the [Sharp Bytes hard drive] for evidence of criminal activity." (Stipulation Regarding Filter Team Procedure, Doc. 143-5, at 1-2). The proposed stipulation called for the creation of a filter team comprised of FBI agents and Assistant U.S. Attorneys who were not members of the prosecution team responsible for prosecuting the case and who were forbidden from having contact with members of the prosecution

team about the case. (Id. at 3-5). The prosecution team consisted of two Government employees—an FBI agent and a prosecutor. Members of the prosecution team changed during the course of the investigation. In 2008, Russell Stoddard took over for the original prosecutor, (June 4 Tr., Stoddard Test., at 16), and Special Agent Vanessa Stelly replaced the FBI agent who initiated the investigation, (see id. at 19-20).

The proposed stipulation required Defendant and Delco to provide the filter team with a list of their attorneys. Defendant was also required to tell the Government whether he, Delco, or both were privilege holders with regard to communications with each attorney on the list. (Doc. 143-5 at 2). An FBI computer analyst was then to give to the filter team communications to or from attorneys on the list provided by Defendant and Delco, and he was to deliver the remaining communications to the prosecution team. (Id. at 3-4). If members of the filter team believed that any communications were not privileged, or that the privilege had been waived, they were required to deliver copies of those documents to the relevant privilege holder, Defendant or Delco. (Id. at 7). If Defendant or Delco believed that the identified documents contained privileged information, either could notify the filter team within thirty days, and the parties were then to attempt to resolve the issue. (Id. at 7-8). If no resolution was reached, Defendant or Delco was to submit the unresolved matter to a magistrate judge for determination. (Id. at 8). The proposed stipulation was clear that "[t]he Prosecution Team [would] not review . . . [d]ata [as to which there was a disagreement as to privilege] (until and unless the magistrate determine[d] that the data is not privileged and any time for appeal has expired)." (Id. at 9).

The Government sent the unsigned proposal to defense counsel and the bankruptcy trustee for Delco. (See June 4 Tr., Guard Test., at 75; June 4 Hr'g, Gov't Ex. 10). Defense

3

counsel signed the proposed stipulation on behalf of Defendant and returned it to the Government, (June 4 Tr., Guard Test., at 77-78; Doc. 143-5 at 10), and, in accordance with the stipulation, Defendant later identified the names of attorneys who had provided Defendant with legal representation, (Doc. 192 at 2-5). The bankruptcy trustee for Delco, however, declined to sign the stipulation and instead waived the privilege on behalf of Delco. (Ex. 3 to Gov't Resp. to Renewed Mot. Dismiss, Doc. 170-3, at 2). No representative of the U.S. Attorney's Office signed the stipulation. Nonetheless, the Government proceeded as if the stipulation were in effect. A filter team was put together under the leadership of Assistant U.S. Attorney John Guard. An FBI computer analyst processed the digital information contained on the Sharp Bytes hard drive. (See June 4 Tr., McCrohan Test., at 51). And, as required by the stipulation, the analyst segregated data that was potentially privileged based on attorney names and email addresses provided by defense counsel. (Id. at 59-60).

Mr. Guard then reviewed all of the data obtained from the computer analyst, including the potentially privileged data.[1] (See June 4 Tr., Guard Test., at 80-82). Ignoring the stipulation, he gave the prosecution team access to any documents that he deemed not privileged, including at least some of the communications between Defendant and his identified attorneys. (Id. at 82). At an evidentiary hearing, Mr. Guard explained why he failed to deliver copies of emails to and from Defendant's identified attorneys to defense counsel as required by the stipulation. First, he testified that he believed the waiver of

---

[1] During this review process, FBI Agent Janet Pellicciotti sat next to Mr. Guard at the computer terminal. (June 4 Tr., Guard Test., at 86). Agent Pellicciotti did not discuss with Agent Stelly any content that she saw on the emails. (June 4 Tr., Pellicciotti Test., at 95).

4

privilege by Delco's bankruptcy trustee waived any objection that Defendant may have to the emails that were marked as non-privileged. (Id. at 82-83). Second, he asserted that because the trustee had not signed the stipulation, it was not binding on the Government. (Id.).

As a member of the prosecution team, Agent Stelly reviewed the emails that Mr. Guard had marked as non-privileged.[2] (June 4 Tr., Stelly Test, at 106-07, 113-14). These documents informed Agent Stelly's conversations with Mr. Stoddard, who relied on her to educate him about the case. (June 4 Tr., Stelly Test., at 108-11; June 4 Tr., Stoddard Test., at 20-21). Mr. Guard, meanwhile, contrary to the stipulation, made no effort to notify defense counsel that he had marked some items as non-privileged. (June 4 Tr., Guard Test., at 82). Not hearing otherwise, defense counsel reasonably believed that the stipulation had been executed and was in effect. Defense counsel did not learn that the Government had not followed the procedures described in the stipulation until the Government disclosed, shortly before the second trial began, that it intended to introduce an email ("the Wachovia Email") between Defendant and attorney Richard Thames in the second trial. (Mem. Supp. Def.'s Mot. Dismiss, Doc. 229 at 5; see Docs. 143-1, 143-2, & 143-3; Gov't Am. Ex. List, Doc. 141).

Upon learning that the prosecution team had possession of and intended to use attorney-client privileged information, Defendant promptly moved to dismiss the Indictment based on alleged government misconduct. (Mot. Dismiss, Doc. 143). Defendant argued

---

[2] Agent Stelly also received a disk containing seized evidence, but it is unclear whether she reviewed that information. (See June 4 Tr., Stelly Test., at 101-02; but see Oct. 18 Tr., Stelly Test., at 39 ("I reviewed . . . the chain of custody for that [disk], and I did not access it at that time.")).

alternatively that the emails should not be admitted at trial. (Id.). Ultimately, the Government decided not to use the Wachovia Email at trial, and I reserved ruling on the motion to dismiss the Indictment pending an evidentiary hearing. (Mins., Doc. 151). The guilty verdict was returned after a ten-day trial, whereupon Defendant renewed his motion to dismiss the Indictment and requested an evidentiary hearing. (Renewed Mot. Dismiss, Doc. 166). Two evidentiary hearings were conducted to determine what potentially privileged materials were accessed or used by the prosecution team. (See June 4, 2013 Mins., Doc. 188; Oct. 18, 2013 Mins., Doc. 207).

### C. Potentially Privileged Materials

At the evidentiary hearings, Agent Stelly and other Government witnesses testified about communications they saw between Defendant and his attorneys. The testimony showed that Agent Stelly was the only member of the prosecution team who saw privileged communications other than the Wachovia Email. (See June 4 Tr., McCrohan Test., at 54-60, 66; see also Oct. 18 Tr., Stelly Test., at 15-27, 46, 65; June 4 Tr., Stoddard Test., at 39-40, 46). As detailed below, Agent Stelly testified about the communications between Defendant and his attorneys that she saw.

*1. Wachovia Email*

Agent Stelly saw the Wachovia Email. (June 4 Tr., Stoddard Test., at 39; June 4 Tr., Stelly Test., at 112; June 4 Hr'g, Gov't Ex. 7). The email chain was communication between Defendant and attorney Richard Thames consisting of questions and discussion about a document related to a loan from Wachovia Bank. (June 4 Hr'g, Ex. 7; Doc. 143-3 at 2). Documents that Defendant submitted in connection with loans from Wachovia were a basis of the Government's claims of fraud. Agent Stelly showed Mr. Stoddard the email exchange, and he marked it as a trial exhibit, (June 4 Tr., Stelly Test., at 112; see also

6

Gov't Am. Ex. List, Doc. 141, at 16), but the Government did not introduce the email as evidence at trial, (June 4 Tr., Stoddard Test., at 39-40). This email chain was the only privileged attorney-client communication seen by Mr. Stoddard.

2. *Other Thames Emails*

In addition to the Wachovia Email, Agent Stelly reviewed eight other emails between Defendant and Mr. Thames. (June 4 Tr., Stelly Test., at 112). These emails mostly regarded Wachovia. (June 4 Hr'g, Gov't Exs. 6A-6H). Communications between Defendant and Mr. Thames pertained to flights for a trip to Atlanta (id., Gov't Exs. 6A & 6B), a meeting with Wachovia in Atlanta (id., Gov't Ex. 6C), discussions over apparent troubles between Delco and Wachovia (id., Gov't Ex. 6D), documents Defendant needed to gather (id., Gov't Exs. 6E & 6F), general inquiries and advice (id., Gov't Ex. 6G), and bank accounts (id., Gov't Ex. 6H). These emails did not change Agent Stelly's investigation strategy, nor did they cause her to recommend that different witnesses be interviewed or called to testify. (June 4 Tr., Stelly Test., at 116). Agent Stelly did not request that any of these emails be introduced at trial. (Id. at 117). Significantly, Mr. Stoddard did not view any of these emails prior to the conclusion of the second trial.[3] (June 4 Tr., Stoddard Test., at 45-46).

3. *Other Attorneys' Emails*

At the October 18, 2013 evidentiary hearing, Agent Stelly discussed other

---

[3] Many more emails between Defendant and Mr. Thames were marked non-privileged by Mr. Guard and thus available to the prosecution team than were discussed at the evidentiary hearings. (Oct. 18 Hr'g, Gov't Ex. 1-A). Agent Stelly testified about those that she personally saw, as described in the text of this Order. She did not review all of the emails on the hard drive but instead accessed only particular emails based on specific date ranges. (June 4 Tr., Stelly Test., at 114-15).

7

communications to or from attorneys who represented Defendant. (Oct. 18 Tr., Stelly Test.; see Gov't Exs. 1-A & 1-B). Mr. Guard marked many of those emails as non-privileged,[4] including emails from attorneys Bradley Markey[5] and Julie Hand[6] and from paralegal Maureen Cooper.[7] But, Agent Stelly did not review any of those emails. (Oct. 18 Tr., Stelly Test., at 15, 23-24). Additionally, Agent Stelly did not testify specifically about certain communications marked as non-privileged that contained names or email addresses from Defendant's list of attorneys. (See id. at 20-24; Oct. 18 Hr'g, Gov't Ex. 1-A; Doc. 192 at 4).

---

[4] Many communications remained classified as privileged, however. No emails were marked as non-privileged that involved attorneys Brent Procida, (Oct. 18 Tr., Stelly Test., at 16), Peter Hill, (id. at 20), Joe Dykes (id. at 22), Edwin Coolidge (id.), Arthur Graham (id.), Sam Masters (id.), Anthony Pinizzotto (id.), Michael Huey (or any other attorneys at HueyLaw.com) (id. at 26), Geoffrey Schwartz (id.), Kendrick Tucker (id.), David Disney (id. at 27), or Stewart Marshall (id.; see also Oct. 18 Hr'g, Gov't Exs. 1-A & 1-B). There were also no emails that were marked as non-privileged involving two accountants, Parke Teal and Dan Galloghly. (Oct. 18 Tr., Stelly Test., at 27).

[5] At the evidentiary hearing, the Government entered into evidence (Oct. 18 Hr'g, Gov't Ex. 2) what it characterized as "the one e-mail from Mr. Markey," (Oct. 18 Tr. at 15; see also id. at 13). The exhibit actually consists of two emails. (Oct. 18 Hr'g, Gov't Ex. 2). One has a subject line "FW: Delco Oil Expenses" and involves a discussion about payment of utility companies and suppliers. (Id. at 2). The other email involves a discussion about subpoenaing the personal bank records of a Delco employee. (Id. at 4). The Government did not specifically ask Agent Stelly about the second email. (Oct. 18 Tr., Stelly Test., at 13-16). There appears to be at least one other email on the list of documents marked as non-privileged involving Mr. Markey titled "Sale of Beville Road Property"; other attorneys were addressed on that email as well. (Oct. 18 Hr'g, Gov't Ex. 1-A, at 8).

[6] According to the Government, the name Julie Hand "only produced one e-mail" on the list of documents marked as not privileged. (Oct. 18 Tr. at 23). The Government submitted this email, which was sent to three attorneys from the list and discussed a number of properties and contracts. (Oct. 18 Hr'g, Gov't Ex. 5). There were at least two other emails marked as non-privileged involving Julie Hand. (Id., Gov't Ex. 1-A at 1, 9). These emails also involved another attorney on the list, Alex Ford, and were discussed by Agent Stelly with the testimony related to Mr. Ford. (Id., Gov't Ex. 6).

[7] Only one email involving Maureen Cooper was marked as non-privileged. (See Oct. 18 Tr., Stelly Test., at 23; Oct. 18 Hr'g, Gov't Ex. 1-A at 17). The email in question discussed dates relating to the satisfaction of particular mortgages and did not implicate Defendant in fraudulent activity. (Oct. 18 Hr'g, Gov't Ex. 4).

8

These communications were also sent to other attorneys, and Agent Stelly likely testified about all of these communications in connection with the other attorneys.

Agent Stelly did, however, review communications involving two other attorneys on Defendant's list: Rex Ware and Alex Ford. The emails between Defendant and Mr. Ware were regarding fuel taxes owed to the state of Florida by Delco, an issue unrelated to charges in this case. Agent Stelly did not discuss those emails with Mr. Stoddard, review the emails in preparation for trial, seek search warrants based on the information, or otherwise act on the information.[8] (Id. at 16-19). Agent Stelly additionally saw some communications with Mr. Ford involving real estate transactions that were also unrelated to charges in this case, and she did not use the information she gleaned from those emails in her work on the case. (Id. at 20-22).

## II. The Parties' Arguments

Defendant argues that the Indictment should be dismissed because the Government did not comply with the terms of the stipulation, violating his attorney-client privilege. (Doc. 143 at 1, 5; Doc. 166 at 1). He contends that the Government's assertion that the communications were not used is not credible, and he highlights various inconsistencies in Agent Stelly's testimony regarding her access to the evidence. (Doc. 229 at 7-11). He contends that access to the emails influenced the course of the investigation and the case, (Doc. 233 at 2-3), and violated his rights under the Fifth and

---

[8] At the October 18 evidentiary hearing, the Government entered into evidence the emails between Rex Ware and Defendant that were marked as non-privileged by the filter team. (Oct. 18 Hr'g, Gov't Ex. 3). Notably, some of the emails from Mr. Ware to Defendant state "CONFIDENTIAL/ATTORNEY CLIENT PRIVILEGED" at the beginning of the emails, (id.), but that warning deterred neither Mr. Guard from marking the emails as non-privileged nor Agent Stelly from reviewing the emails.

9

Sixth Amendments to the United States Constitution, (Doc. 178 at 4). Notably, Defendant does not point to a specific email that actually influenced the investigation or made his conviction more likely. Defendant nonetheless argues that the Indictment should be dismissed or the conviction vacated. (Doc. 229 at 24-29).

The Government, on the other hand, argues that Defendant failed to carry his burden of proving attorney-client privilege because there was only a relationship between Mr. Thames and the corporation, Delco, and this privilege was waived by Delco's trustee in bankruptcy. (Doc. 170 at 4). The Government also contends that Defendant cannot demonstrate any prejudice because the prosecution team did not use privileged evidence. (Id.). The Government contends that even if there was a violation of attorney-client privilege, the proper remedy is less drastic than dismissal of the Indictment, such as sustaining an evidentiary objection to the information that the Government might seek to introduce at sentencing or suppressing all future use of privileged information and requiring the Government to return it to Defendant. (Doc. 228 at 26-27).

## III. Analysis

The parties focus a great deal of their arguments on whether the proposed stipulation was in effect. To the extent the Government argues that no stipulation existed, it is estopped by its own conduct from doing so. Defense counsel signed the proposed stipulation and reasonably relied on it, with no indication from the Government that it was not in effect. Furthermore, the Government acted as though the stipulation was in effect until Mr. Guard decided to disregard its provisions.[9] Regardless of whether the stipulation was in effect, however, the Government violated Defendant's attorney-client privilege.

---

[9] With surprising temerity, the Government also argues that Defendant did not identify himself as the holder of the privilege as required by the stipulation. That is not the

The Government's violation of this privilege is a serious matter. "The attorney-client privilege exists to protect confidential communications between client and lawyer made for the purpose of securing legal advice . . . ." In re Grand Jury Proceedings 88-9 (MIA), 899 F.2d 1039, 1042 (11th Cir. 1990) (quotation omitted). Attorney-client privilege is regarded by courts as "absolutely essential to our representational system." In re Grand Jury Matter No. 91-01386, 969 F.2d 995, 997 (11th Cir. 1992). The privilege is a common law doctrine, but under some circumstances intrusions into an attorney-client relationship can rise to the level of a constitutional violation. Indeed, in this case Defendant argues that his rights under the Fifth and Sixth Amendments were violated by the Government's conduct with respect to email communications between him and his attorneys. While Defendant has established some elements of an attorney-client privilege claim, his Fifth and Sixth Amendment arguments are unavailing, and he is not otherwise entitled to relief.

The party invoking attorney-client privilege must prove, as an initial matter, that "an attorney-client relationship existed and that the particular communications were confidential." United States v. Schaltenbrand, 930 F.2d 1554, 1562 (11th Cir. 1991). For the privilege to apply, the communications must be shown to be made to an attorney confidentially, in the attorney's professional capacity, "'for the purpose of securing legal advice or assistance.'" Id. (quoting United States v. Ponder, 475 F.2d 37, 39 (5th Cir. 1973)).

Defendant has met his burden of showing that attorney-client relationships existed and that the communications were confidential. Defense counsel submitted the names of

---

case. Defense counsel identified the email addresses of Defendant's attorneys on the list provided to the Government, and the title of the document was "Re: Steve DeLuca." (Doc. 192 at 2).

attorneys pursuant to the stipulation, and the Government has not argued that any of the listed attorneys whose communications were seen by the prosecution team—except Mr. Thames—were not Defendant's personal attorneys. (See Docs. 170, 228, & 232). In failing to object to the other attorneys on the list after it was received or in the multiple hearings held before this Court, the Government conceded that those attorneys on the list represented Defendant.

Furthermore, the evidence establishes that Mr. Thames served as Defendant's personal attorney for the Wachovia matter, and the communications in question related to his representation of Defendant. Defendant testified that Mr. Thames represented him personally in the Wachovia matter. (June 4 Tr., Def. Test., at 120). At some point, Mr. Thames signed an affidavit including a description of the matters in which he represented Defendant; the Wachovia transaction was not included. (Id. at 122-23). Defendant explained this apparent omission, testifying that he was unaware of a pending Wachovia matter at the time Mr. Thames signed the affidavit and that "Mr. Thames had a long history of representing" Defendant and his wife. (Id. at 124). Defendant testified that he and Delco paid Mr. Thames separately. (Id. at 120, 127). Finally, Defendant put the Government on notice that he considered Mr. Thames his attorney by the list he submitted pursuant to the stipulation. The first requirement of showing that an attorney-client relationship existed is satisfied.

Defendant also established that the communications were made confidentially for the purpose of securing legal assistance, and the Government does not contend otherwise.[10] The emails submitted in the evidentiary hearings were generally only between

---

[10] The Government did raise the argument in its post-hearing memorandum that the

Defendant and one or more of his attorneys, and they almost uniformly focused only on matters for which Defendant appeared to be seeking legal assistance. Thus, Defendant has established that privileged communications were accessed by the Government.

Additionally, the attorney-client privilege between Defendant and his attorneys was not waived. Delco's trustee in bankruptcy had the authority to waive Delco's attorney-client privilege, but that authority did not extend to allow the trustee to waive Defendant's personal attorney-client privilege. Cf. Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 358 (1985) (stating that a corporation's trustee in bankruptcy "has the power to waive the corporation's attorney-client privilege"). Though Defendant has shown that the Government saw privileged information, dismissal of the Indictment is not warranted, for the reasons stated below.

### A. Fifth Amendment Claim

Defendant argues that the Government violated his Fifth Amendment rights by inhibiting his ability to consult counsel in private. (Doc. 178 at 11). Defendant's theory for relief under the Fifth Amendment is unclear, but no matter its formulation, Defendant's Fifth Amendment claim fails. For the Government's improper acquisition of privileged communications "[t]o constitute a [Fifth Amendment] violation[,] the law enforcement technique [at issue] must be so outrageous that it is fundamentally unfair and 'shocking to the universal sense of justice mandated by the Due Process Clause of the Fifth Amendment.'" United States v. Ofshe, 817 F.2d 1508, 1516 (11th Cir. 1987) (quoting

---

Wachovia Email is not privileged due to the crime-fraud exception to attorney-client privilege. (Doc. 228 at 17). Because this Court decides this motion in the Government's favor, it does not address the merits of the crime-fraud exception argument or whether it was timely argued.

13

United States v. Russell, 411 U.S. 423, 432 (1973)). This doctrine "is to be invoked only in the rarest and most outrageous of circumstances." Id. (internal quotation marks omitted). In Ofshe, the Government used a defendant's criminal defense attorney as an informant against the defendant, but those actions still did not rise to the level of "shocking to the universal sense of justice." Id. In holding that the defendant was not entitled to dismissal of the indictment, the court emphasized that the defendant had suffered no prejudice. Id.

The facts of the present case are much less outrageous than those in Ofshe, and dismissal of the Indictment under the Fifth Amendment is not warranted here. See also United States v. Valencia-Trujillo, No. 8:02-CR-329-T-17EAJ, 2006 WL 1793547, at *9-10 (M.D. Fla. June 26, 2006). While I am deeply troubled by the Government's conduct regarding the stipulation, the Government's actions were not so outrageous that they shock the universal sense of justice, as required for a Fifth Amendment Due Process violation.

To the extent Defendant raises a Fifth Amendment argument based on the right against self-incrimination, that argument also fails. Defendant contends that the Government should have the same high burden that would apply to a situation involving the Government's use of immunized testimony. See Kastigar v. United States, 406 U.S. 441, 461-62 (1972) ("One raising a claim under [an immunity] statute need only show that he testified under a grant of immunity in order to shift to the government the heavy burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources."). Defendant has provided no support for his assertion that this burden should be used, and other courts have found that the heightened burden is inappropriate. See United States v. Warshak, 631 F.3d 266, 292-95 (6th Cir. 2010) ("[N]o other appellate court appears to have joined us in suggesting that Kastigar is implicated

whenever investigators come into possession of materials subject to the attorney-client privilege. . . . [B]ecause the documents were not the product of compelled testimony, a full Kastigar hearing was not required."). The burden imposed on the Government in the context of immunized testimony is thus inapplicable, and Defendant makes no other clear argument regarding his asserted violation of the right against self-incrimination.

### B. Sixth Amendment Claim

Defendant also argues that the Indictment should be dismissed based on an alleged violation of his Sixth Amendment rights. (Doc. 178 at 8). In post-trial briefing, however, Defendant forthrightly conceded that the Sixth Amendment is not implicated in this case because the communications occurred before the Indictment, (Doc. 229 at 19); the Government agrees, (Doc. 228 at 18). Sixth Amendment protections attach only at the commencement of a formal prosecution, such as when an indictment is returned. Texas v. Cobb, 532 U.S. 162, 167-68 (2001). The communications at issue here occurred in 2006 or earlier—well before the Indictment was returned in 2011. Accordingly, Defendant's motion to dismiss the Indictment on the basis of a violation of his Sixth Amendment rights must be denied.

### C. Prejudice

Even if Defendant had established a constitutional violation, his claim for dismissal of the Indictment would nevertheless fail. Violations of the Fifth and Sixth Amendments based on improper access of privileged communications, if established, do not automatically result in dismissal. Dismissal requires a showing of prejudice. For instance, in a case involving an alleged violation of the right to counsel that did not involve privileged communications, the Supreme Court found that "absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though

the violation may have been deliberate. . . . The remedy in the criminal proceeding is limited to denying the prosecution the fruits of its transgression." United States v. Morrison, 449 U.S. 361, 365-66 (1981). A criminal defendant has the burden to show prejudice to obtain dismissal of an indictment if the defendant's attorney-client relationship was violated. United States v. Sander, 615 F.2d 215, 219 (5th Cir. 1980)[11]; United States v. Melvin, 650 F.2d 641, 644 (5th Cir. 1981); see also United States v. Bell, 776 F.2d 965, 972 (11th Cir. 1985) ("Even assuming . . . that there was a violation of [the defendant's] [S]ixth [A]mendment right to counsel, dismissal of the indictment would still be inappropriate absent demonstrable prejudice to the defendant.").

Defendant has not met this burden. Defendant has not come forward with any evidence that he was injured by the Government's actions. He points to no evidence that any privileged material was directly used in the Government's case against him at trial or influenced the Government's trial strategy in any way. Indeed, the evidence shows that though Agent Stelly did review a small percentage of privileged material, that material did not impact the case—very little of it was shown to the U.S. Attorney's office, and the single email that was shown to the prosecutor did not impact the trial strategy and was not introduced as evidence at trial. Furthermore, Agent Stelly was the only member of the prosecution team to view privileged data other than the Wachovia Email. Defendant has failed to even show how any of the emails, including the Wachovia Email, if seen by the prosecution team, could have prejudiced him—he points to no emails that contained "smoking gun" evidence of guilt or that identified additional witnesses or facts that could be

---

[11] The Eleventh Circuit adopted as binding precedent decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

used by the prosecution. Defendant only speculates that the Government's access of privileged information infected the case; this is not enough to show prejudice. Because he has failed to show prejudice that led to his conviction, dismissal of the Indictment is plainly inappropriate.

Were the burden to show lack of prejudice on the Government, the result would be the same. The Government brought forth Agent Stelly to testify about many of the privileged communications that were classified as non-privileged, and she stated that other than the Wachovia Email, none of the emails had an impact on the case. The Wachovia Email itself was not introduced at trial and did not otherwise influence the case. Agent Stelly's testimony was credible, and any misstatements were a result of a lack of preparation for the evidentiary hearings on the part of the prosecution and the passage of time during the complex investigation. Furthermore, the significance of the emails pales in comparison to the abundance of evidence presented at trial that supports Defendant's conviction. Accordingly, regardless of whether Defendant or the Government bears the burden, prejudice supporting dismissal of the Indictment has not been established.

Finally, had Defendant shown a constitutional violation accompanied by prejudice, dismissal of the Indictment would nonetheless be inappropriate. When a defendant has shown prejudice, a court must determine if a less drastic remedy, such as suppression of the evidence in question, can sufficiently address the constitutional violation. Melvin, 650 F.2d at 644. Because the privileged emails were not admitted at trial, a remedy short of dismissal is appropriate in this case. Defendant has not pointed to any authority supporting the drastic remedy of dismissal of the Indictment on these facts, and I am aware of none. Dismissal of the Indictment is thus unwarranted. See United States v. Diaz, 156 Fed. App'x

17

223, 224 (11th Cir. 2005) (noting that dismissal of an indictment "is a disfavored remedy and should only be utilized in the most egregious of cases"); see also United States v. Mitan, 499 F. App'x 187, 193 (3d Cir. 2012); United States v. Noriega, 764 F. Supp. 1480, 1489-90 (S.D. Fla. 1991).

### D.  Supervisory Powers

I am aware that a trial court "may also exercise its supervisory powers to dismiss an indictment in response to outrageous government conduct that falls short of a due process violation." United States v. SDI Future Health, Inc., 464 F. Supp. 2d 1027, 1052 (D. Nev. 2006). "The purposes underlying use of the supervisory powers are threefold: to implement a remedy for violation of recognized rights; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury; and finally, as a remedy designed to deter illegal conduct." United States v. Hasting, 461 U.S. 499, 505 (1983) (citations omitted). Dismissal under a court's supervisory powers, however, also requires prejudice, which has not been shown here. United States v. Campagnuolo, 592 F.2d 852, 865 (5th Cir. 1979); see also Hasting, 461 U.S. at 506.

### E.  Remedy

Though Defendant has not made a case for dismissal of the Indictment, he has shown that Defendant's confidential communications with his attorneys were reviewed by the Government. The proper remedy, as initially requested by Defendant, is suppression of the evidence. None of the privileged communications were used at trial, so vacation of the conviction to allow for a new trial would be unwarranted. I will, however, require the Government to destroy all of the privileged communications in its possession and not use any of the privileged communications at sentencing. This remedy will protect the attorney-

client privilege by preventing the Government from relying on privileged information in the future.

## IV.  Conclusion

This Court has found that dismissal of the Indictment and vacation of the conviction are inappropriate in this case because Defendant suffered no prejudice from the Government's actions. However, attorney-client privilege is an essential aspect of this country's adversarial and representational system, and the Government disregarded the important protections provided by the privilege. Attorneys for the Government made assurances to Defendant and defense counsel that privileged information would not be accessed by the prosecution team, but they accessed it anyway. The use of filter teams in these matters can be efficient, but their use requires trust in the Government by citizens and attorneys. The Government's actions in this case risk undermining that trust.

Accordingly, it is **HEREBY ORDERED AND ADJUDGED** that:

1. Defendant's Motion to Dismiss the Indictment (Doc. 143) and Renewed Motion to Dismiss the Indictment (Doc. 166) are **DENIED**.

2. The Government must send a copy of all emails involving communications with the attorneys on Defendant's list to defense counsel **on or before July 28, 2014**. The Government is ordered to then destroy all of those emails involving communications with the attorneys on that list **on or before August 4, 2014**. The Government **shall file** a Notice of Compliance once it has done so.

3. The Government is instructed that it shall not use any communications described in paragraph 2 above at sentencing.

4. Sentencing of Defendant will be scheduled by separate notice.

DONE and ORDERED in Orlando, Florida on July 8th, 2014.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record